# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

REYNALDO R. CATO,

    Petitioner,

v.                                        Case No. 3:17-cv-20-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

    Respondents.

## ORDER

### I. Status

Petitioner Reynaldo R. Cato, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. See Doc. 1. He challenges a state court (Duval County, Florida) judgment of conviction for burglary of a dwelling. He is currently serving a twenty-five-year term of incarceration as a habitual felony offender with a fifteen-year minimum mandatory as a prison release reoffender. Respondents filed a Response. See Doc. 17 (Resp.).[1] Petitioner declined to file a reply. See Doc. 20. This case is ripe for review.

---

[1] Attached to the Response are several exhibits. See Doc. 17-1 through Doc. 17-5. The Court cites to the exhibits as "Resp. Ex."

## II. Governing Legal Principals

## Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

3

## III. Analysis

## Ground One

Petitioner argues that the trial court erred in imposing a twenty-five-year HFO sentence because the question of whether an enhanced sentence was necessary for the protection of the public was not determined by the jury. Doc. 1 at 17. Petitioner raised this argument in his Florida Rule of Criminal Procedure 3.800(b)(2) motion to correct sentence filed in state court, in which he argued that in Cunningham v. California, 549 U.S. 270 (2007), the United States Supreme Court found that Florida's HFO statute violates the Sixth Amendment and Apprendi v. New Jersey, 530 U.S. 466 (2000). Resp. Ex. E at 3-9. The trial court summarily denied this claim, finding in pertinent part:

> First, the Defendant submits that pursuant to the United States Supreme Court's decision in Cunningham[ ], Florida's habitual felony offender statute, found in section 775.084, Florida Statutes, violates the Sixth Amendment and Apprendi[ ]. In Cunningham, the Supreme Court held that a California sentencing statute, where circumstances in aggravation were found by the judge, not the jury, and only needed to be established by a preponderance of the evidence, not beyond a reasonable doubt, violated Apprendi[ ]. Apprendi held that except for a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.
>
> According to the Defendant, because the habitual felony offender statute presumes that the increased sentence is necessary for the protection of the public, under Cunningham it is necessary that a jury find that the enhanced sentence is necessary for the protection of the public, and established beyond a reasonable doubt. Section 775.084(3)(a), Florida Statutes, reads in relevant part:

> if the state attorney pursues a habitual felony offender sanction or a habitual violent felony offender sanction against the defendant and the court, in a separate proceeding pursuant to this paragraph, determines that the defendant meets the criteria under subsection (1) for imposing such sanction, the court must sentence the defendant as a habitual felony offender or a habitual violent felony offender, subject to imprisonment pursuant to this section unless the court finds that such sentence is not necessary for the protection of the public. If the court finds that it is not necessary for the protection of the public to sentence the defendant as a habitual felony offender or a habitual violent felony offender, the court shall provide written reasons.
>
> The Defendant concedes that Florida courts have consistently found that section 775.084 does not violate Apprendi. In accordance with these previous decisions of the courts of this state, the Court declines to vacate the Defendant's habitual felony offender sentence. See West v. State, 82 So. 3d 987 (Fla. 1st DCA 2011); Thompson v. State, 23 So. 3d 235 (Fla. 1st DCA 2009); Gudinas v. State, 879 So. 2d 616 (Fla. 2004).

Resp. Ex. E at 15-16. Petitioner challenged the trial court's denial during his direct appeal. Resp. Ex. F at 8. The First District Court of Appeal per curiam affirmed the trial court's denial and Petitioner's judgment and sentence without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. Petitioner's enhanced twenty-five-year HFO sentence was based upon Petitioner's prior 2002 conviction for sale or delivery of cocaine and his prior 2010 conviction for fleeing or attempting to elude.

5

Resp. Ex. A at 18, 195; see also § 775.084(1)(a), Fla. Stat.; Dinkens v. State, 976 So. 2d 660, 662 (Fla. 1st DCA 2008) (holding "the habitual felony offender statute is based solely on prior convictions and therefore does not require a jury determination pursuant to Apprendi."). Apprendi does not apply to increases in a sentence due to recidivism. See Apprendi, 530 U.S. at 488-90 (recognizing recidivism as a traditional basis for a sentencing court's increase in an offender's sentence); see also Almendarez-Torres v. United States, 523 U.S. 224 (1998) (holding that a defendant's prior conviction is merely a "sentencing factor" that does not have to be submitted to the jury and proved beyond a reasonable doubt); see also Dinkens, 976 So. 2d at 662 (noting arguments that Apprendi applies to Florida's HFO sentencing scheme have "been repeatedly rejected by Florida courts."). As such, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground One is due to be denied.

## Ground Two

Petitioner asserts that his fifteen-year PRR minimum mandatory sentence violates Apprendi and Alleyne v. United States, 133 S. Ct. 2151 (2013). Doc. 1 at 24. Petitioner raised this issue in his Rule 3.800(b)(2) motion. Resp. Ex. D at 10. The trial court summarily denied the claim as follows:

> In his second argument, the Defendant submits that his fifteen-year minimum mandatory term as a prison

6

release reoffender violates Apprendi. In support of his argument, the Defendant cites to the United States Supreme Court's recent decision in Alleyne[ ]. Alleyne held that facts that increase the mandatory minimum sentence are "elements" of a crime that must be submitted to the jury. Id. at 2155. Essentially, Alleyne held that Apprendi applies with equal force to facts increasing the mandatory minimum as it does to facts increasing the statutory maximum. Id. at 2153. The Defendant argues that his minimum mandatory sentence as a prison release reoffender violates Alleyne for three reasons: (1) the temporal relationship between the current offense and release from prison was determined by the judge rather than the jury; (2) the lack of extenuating circumstances which preclude the just imposition of a prison release reoffender sentence was determined by the prosecutor rather than a jury; and (3) the Defendant's qualification as a prison release reoffender was established by a preponderance of the evidence rather than beyond a reasonable doubt.

Alleyne did nothing to change the fact that Apprendi does not require that proof of prior convictions be submitted to a jury and found beyond a reasonable doubt. In Apprendi, the Supreme Court stated, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). The Supreme Court specifically noted in Alleyne that it was not revisiting this narrow exception that proof of a prior conviction need not be submitted to a jury. 133 S. Ct. at 1260 n.l.

This Court finds persuasive the holding in U.S. v. Flowers, 531 F[]. App[']x. 975 (11th Cir. 2013). In Flowers, the appellant argued that the sentencing court's finding of his predicate Armed Career Criminal Act convictions violated the Sixth Amendment because it raised his minimum mandatory sentence to fifteen years. Id. at 984. The appellant averred that Alleyne mandated a reversal of his sentence. Id. In affirming his sentence, the Eleventh Circuit held that Alleyne did not address prior-conviction sentencing enhancements. Id. at 985. The court held that Alleyne merely extended the rationale of Apprendi, which

7

noted that the Sixth Amendment did not require the fact of a prior conviction to be submitted to a jury and proved beyond a reasonable doubt. Id.

Section 775.082(9)(a), Florida Statutes, defines a prison release reoffender as a defendant who commits, or attempts to commit, one of the specifically enumerated offenses within three years from the release from prison for an offense for which the sentence is punishable by more than one year in the state of Florida. This statute simply requires proof that the current offense was committed within a certain time period from the defendant's release from prison. Such findings do not constitute "elements" of a crime that would fall under the requirements of Alleyne.

As the Defendant correctly points out, the Defendant's argument was rejected in Calloway[ ]. In Calloway, the appellant argued that the imposition of his prison release reoffender sentence without a jury determination that he had committed the robbery within three years of his release from prison violated Apprendi. Id. at 13. The appellant claimed that the fact of his date of release from prison did not fall within the prior conviction exception of Apprendi, and therefore was required to be found beyond a reasonable doubt by the jury. Id. In affirming his sentence, the Court noted that the provisions in section 775.084, allowing for enhanced sentencing if the new offense was committed within a certain period of time from the defendant's release from prison, are similar to the prison release reoffender provision in section 775.082(9)(a). Id. at 14. For both the habitual felony offender statute and the prison release reoffender statute, the trial court must find that the instant offense was committed within a certain period of time from the date of the defendant's last release from prison. Id. The court held that date of release from prison is a part of a defendant's prior record and thus does not need to be presented to a jury and proved beyond a reasonable doubt. Id.

The Court does not find that Alleyne has cast doubt on the holding in Calloway. Because the findings necessary to impose a minimum mandatory sentence under the prison release reoffender statute are similar to those findings necessary to impose an enhanced sentence pursuant to the

8

> habitual felony offender statute in that they both require a finding that a prior conviction exists within a particular time period, the Court does not find that the Defendant's minimum mandatory sentence violates either Apprendi or Alleyne. As such, the Court does not find that it was error to impose the fifteen year minimum mandatory term.

Resp. Ex. D at 16-19. Petitioner challenged the trial court's denial during his direct appeal. Resp. Ex. F at 8. The First DCA per curiam affirmed the trial court's denial and Petitioner's judgment and sentence without a written opinion. Resp. Ex. I.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. In imposing Petitioner's PRR sentence, the trial court relied on Petitioner's prior conviction for fleeing or attempting to elude, from which Petitioner was released from incarceration within three years of the date of the commission of the burglary. Resp. Ex. A at 19. The Court again recognizes that the United States Supreme Court held that prior convictions are not an "element" that must be found by a jury. See Almendarez-Torres, 523 U.S. at 226; see also Mendelson v. Fla. Dep't of Corr., No. 19-10130-J, 2019 WL 3206630, at *2 (11th Cir. May 30, 2019) (citing Almendarez-Torres and holding that petitioner's PRR sentence did not violate Apprendi). As such, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Two is due to be denied.

9

**Ground Three**

Petitioner contends that he is in receipt of newly discovered evidence in the form of a sworn affidavit executed by Mario Nelson in which Nelson admits that he was the individual who committed the burglary. Doc. 1 at 8. Petitioner raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief, see Resp. Ex. J at 24-25, and attached Nelson's affidavit as support, see id. at 31. The trial court summarily denied the claim as follows:

> In his first ground for relief, Defendant maintains a fellow inmate admitted to committing the instant offense. Defendant attaches an affidavit from said inmate to his "(3.850) Motion for Post-conviction Relief," filed on or about August 11, 2014. Defendant further contends he did not commit this crime. To support this argument, Defendant states his deoxyribonucleic acid ("DNA") was at the crime scene because he had previously been in the apartment to use heroin.
>
> The instant affidavit is considered to be a type of newly discovered evidence, and therefore, that standard applies. See Murrah v. State, 773 So. 2d 622, 623 (Fla. 1st DCA 2000). Under rule 3.850(b)(1), a claim of newly discovered evidence requires the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence. Fla. R. Crim. P. 3.850(B)(l).
>
>> To obtain a new trial based on newly discovered evidence, a defendant must demonstrate that: (1) the evidence was not known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence; and (2) the newly discovered evidence is of such nature that it would probably produce an acquittal on retrial.

> Hitchcock v. State, 991 So. 2d 33 7, 349 (Fla. 2008); see also Huffman v. State, 909 So. 2d 922 (Fla. 2d DCA 2005) (concluding newly discovered evidence must be admissible and "must be of such a nature that it would probably produce an acquittal on retrial.") These determinations require an evidentiary hearing, unless the affidavit is inherently incredible or obviously immaterial to the verdict. Stephens v. State, 829 So. 2d 945, 945-46 (Fla. 1st DCA 2002).
>
> The testimony and evidence at trial established that when the victim left her home on the day of the offense, none of her windows were broken, and she had not observed a blood stain on her windowsill. (Ex. D at 210, 224.) When the Jacksonville Sheriff's Office ("JSO") arrived, however, there was a broken window, open door, and a bloodstain on the windowsill. (Ex. D at 227-228.) The JSO evidence technician dispatched to the scene processed the blood from the windowsill, and testified its color was indicative of fresh blood. (Ex. D at 242.) Further, when the technician took blood samples, the area in which the blood was present did not have the dust and debris that coated the rest of the windowsill. (Ex. D at 243.) Florida Department of Law Enforcement ("FDLE") found Defendant to be a match to the DNA recovered at the crime scene. (Ex. D at 315.) JSO arrested Defendant based on the results of the DNA testing at FDLE. (Ex. D at 266-67.) Notably, there was evidence at trial that multiple individuals may have been involved in this crime. (Ex. D at 302.)
>
> The Court finds the attached affidavit inherently incredible and immaterial to the verdict based on the testimony and evidence described above. Stephens, 829 So. 2d at 945-46. Accordingly, Defendant is not entitled to relief.

Resp. Ex. J at 77-78. The First DCA per curiam affirmed the trial court's summary denial without a written opinion. Resp. Ex. K.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court must accept the state court's finding of fact because of the high deference afforded to it. The only exception is if the state court's finding was unreasonable based

11

on the evidence before it. This exception does not apply here. In considering this claim, the state court compared Petitioner's allegations to the evidence presented at trial. Petitioner claimed that his DNA (blood) was found at the crime scene because he was at the apartment "in August of 2011 to use heroin." Resp. Ex. J at 24. However, the burglary occurred on April 15, 2012, and evidence demonstrates that Petitioner's blood was fresh when police arrived on scene. Resp. Ex. C at 242. Further, the state court noted that during trial, one of the officers testified that an eyewitness to the crime reported that she saw multiple individuals commit the burglary.[2] Id. at 302-03. Thus, Nelson's affidavit that he committed the crime does not wholly exonerate Petitioner as Nelson and Petitioner could have committed the burglary together. As such, the Court concludes that the state court's finding that Nelson's affidavit was incredible and immaterial was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court's adjudication of the claim was also not contrary to clearly established federal law, and it did not involve an unreasonable application of clearly established federal law. Thus, Petitioner is not entitled to relief on the basis of this claim. Ground Three is due to be denied.

---

[2] Detective Bush testified that during his investigation of the burglary, he spoke with an eyewitness: Ms. Reese. Resp. Ex. C at 302. According to Detective Bush, Ms. Reese reported that she saw two individuals commit the burglary; however, she was unable to identify who either of the burglars were from a photospread and she did not testify at trial. Id. at 302-03.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED with prejudice**.

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[3]

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of December, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

---

[3] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

Jax-7

C: Reynaldo Cato, #J19035
Bryan G. Jordan, Esq.